IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| DEBBIE V. SALOMON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | EP-10-CV-106-KC |
| § | |
| WELLS FARGO BANK, N.A., and § | |
| WELLS FARGO BANK § | |
| § | |
| Defendants. § | |

**ORDER**

On this day, the Court considered Plaintiff's Motion to Remand ("Pl.'s Mot.") (Doc. No. 4). For the reasons set forth herein, the Motion is **GRANTED**.

**I.   BACKGROUND**

Plaintiff Debbie Salomon ("Salomon") is a citizen of Texas. Notice of Removal ¶3 ("Not. Rem.") (Doc. No. 1). Defendant Wells Fargo Bank, N.A. ("Wells Fargo")[1] is a national banking organization with its main office in South Dakota and is therefore a citizen of South Dakota. *Id*.; *see also* 28 U.S.C. §1348. Salomon was hired by Wells Fargo as a bank teller in 1997. Pl.'s Mot. to Remand 1 ("Pl.'s Mot.") (Doc. No. 4). She was later promoted to a customer service representative position and then to the position of personal banker. *Id*. at 1-2. In 2009, Salomon applied for an assistant manager position but was not selected. *Id*. at 2. Salomon then allegedly complained of discriminatory treatment and requested a transfer. *Id*. Her request for

---

[1] Wells Fargo Bank, N.A. asserts in its Original Answer that the additional Defendant, Wells Fargo Bank, is a fictitious name under which Wells Fargo Bank, N.A. does business. Def.'s Resp. to Pl.'s Mot. to Remand Ex. C ¶ 4.

transfer was denied. *Id.* On April 28, 2009 she was suspended from her job and shortly thereafter filed an EEOC charge of discrimination and retaliation. *Id.* On May 13, 2009, Plaintiff was terminated. *Id.*

Salomon filed her Original Petition in state court on December 21, 2009, alleging discrimination on the basis of sex and age, and retaliation, all in violation of section 21.001 of the Texas Labor Code. *See* Pl.'s Orig. Pet. 4 (Doc. No. 4-1). Salomon asserted damages for "back pay and benefits, front pay and benefits, compensatory damages in the past and future, reasonable and necessary attorney fees, exemplary damages, pre-judgment and post-judgment interest as allowed by law, costs of Court and other compensatory damages . . . in an amount within the jurisdictional limits of [the state] [c]ourt." *Id.* at 5. On January 28, 2010, Wells Fargo filed its Original Answer and served Salomon with Requests for Disclosures. Def.'s Resp. to Pl.'s Mot. to Remand 1 ("Def.'s Resp.") (Doc. No. 5).

On February 18, 2010, Wells Fargo was served with Plaintiff's Response to Defendant's Request for Disclosures, which stated that

> Plaintiff would calculate back pay and benefits at the rate of $16.49 per hour for an average of 40 hours per week from the date of termination to present. Plaintiff would calculate her front pay and benefits at a rate of $16.49 per hour for an average of 40 hours per week from the date of trial for a period of five (5) years into the future.

Def.'s Resp. 1.

On March 16, 2010, Wells Fargo removed the case to this Court alleging diversity jurisdiction. *Id.* Salomon then filed her Motion to Remand on March 23, 2010. Pl's Mot. 1. Wells Fargo filed its Response to Plaintiff's Motion to Remand on April 5, 2010. Def.'s Resp. 1. Salomon filed her Reply on April 12, 2010. *See* Pl.'s Reply to Def's. Resp. to Pl.'s Mot. to Remand ("Pl.'s Reply") (Doc. No. 6).

On April 14, 2010, Wells Fargo filed a Motion for Leave to File a Sur-Reply to Plaintiff's Motion to Remand seeking permission to respond to issues that Wells Fargo claims Salomon raised for the first time in her Reply. *See* Def.'s Mot. for Leave to File a Sur-Reply 3 ("Def.'s Mot.") (Doc. No. 7). Salomon filed a response claiming that she raised no new arguments in her Reply. *See* Pl.'s Resp. to Def.'s Mot. for Leave to File a Sur-Reply 2 ("Pl.'s Resp.") (Doc. No. 8).

## II.     DISCUSSION

### A.     Motion for Leave to File a Sur-Reply

Wells Fargo has sought permission to file a sur-reply brief in connection with Salomon's Motion to Remand. *See* Def.'s Mot. 3. While much of the proposed sur-reply is dedicated to discussing case law originally cited in Salomon's Motion to Remand, the sur-reply does address *Exceleron Software v. TGEC Communications*, a case cited for the first time in Salomon's Reply. *See* Pl.'s Reply 1 (citing *Exceleron Software v. TGEC Commc'ns*, 3:05-cv-2007, 2005 WL 3542566 (N.D. Tex. Dec. 23, 2005)). Because Wells Fargo seeks to respond to Salomon's use of *Exceleron*, and distinguish its facts from this case, it has provided adequate justification for its Sur-Reply. Accordingly, Wells Fargo's Motion for Leave to File is **GRANTED**.

### B.     Motion to Remand

Regarding the underlying issue of diversity jurisdiction and remand, neither party to this case disputes that complete diversity of parties exists and that the amount in controversy exceeds the jurisdictional minimum. Def.'s Resp. 2. The only issue before the Court is the timeliness of Wells Fargo's removal.

### 1. Standard

A defendant may remove to federal court "any civil action brought in State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. §1441(a); *see also* 28 U.S.C. § 1446(a). A federal district court has subject matter jurisdiction over a state law controversy when the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a). The removal statutes are to be construed strictly against removal and in favor of remand. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988); *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986). The party seeking the federal forum bears the burden of showing that federal jurisdiction exists and that removal is proper. *See id.* A motion to remand, predicated on a procedural defect and not a lack of subject-matter jurisdiction, must be filed within "30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c).

### 2. Timeliness of Wells Fargo's removal

Wells Fargo argues that its Notice of Removal was timely because Salomon's Original Petition does not include any specific allegation that she seeks an award in excess of $75,000. Def.'s Resp. 3-4. It argues that the time for removal only began once they received the discovery response noted above, in which Salomon outlines the lost pay damages she is seeking to recover. *See id.* 1, 3-4. For removal to be timely, a defendant must file a notice of removal within thirty days of its receipt of the initial pleading in the action. 28 U.S.C. §1446(b). The thirty day removal period is triggered by the receipt of an initial pleading "only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum

-4-

jurisdictional amount of the federal court." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992). If the initial pleading is not removable, the defendant may file a notice of removal within thirty days of its receipt of an "other paper" from which it can be determined that the action is removable. 28 U.S.C. §1446(b). Discovery responses may constitute "other paper[s]" under section 1446(b). *See, e.g., S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). However, the amount in controversy must be judged with reference to the time the original state court pleading is filed. *See St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

An initial pleading that does not assert a specific numerical amount of damages above the federal threshold can still "provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal." *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 210 (5th Cir. 2002); *see also Marcel v. Pool*, 5 F.3d 81, 84 (5th Cir. 1993). Where a specific numerical allegation of damages is not provided, the court must determine if it clear that the damages will likely exceed $75,000 in that particular case. *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003); *Muniz v. El Paso Marriott*, No. 09-cv-274, 2009 U.S. Dist. LEXIS 114619, at *14 (W.D. Tex. Dec. 8, 2009) (El Paso Div.) (Cardone, J.).

When damages are not set forth in the pleadings numerically, parties generally contest the amount in controversy in remand motions under one of two common procedural postures. In the first posture, the defendant has removed a case within thirty days of the service of the original pleadings, and the plaintiff is objecting on the basis that the amount in controversy is not met. *See, e.g., Muniz*, 2009 U.S. Dist. LEXIS 114619, at *12-14. In such a case, the defendant can

justify removal in two distinct ways: (1) by arguing that the face of the complaint made it clear that the amount in controversy minimum is reached; (2) by bringing summary-judgment-type evidence to prove, factually, that the amount at stake in the particular case exceeds the threshold. *St. Paul Reinsur. Co.,* 134 F.3d at 1253.

In the second posture, the defendant has declined to remove within the first thirty days of the case, removing later on the basis of some "other paper" which, the defendant claims, was the first indication that the suit was removable. *See, e.g., Chapman*, 969 F.2d at 161; *see also Burroughs v. Raytheon Tech. Servs. Co.*, No. EP-06-CA-89-DB, 2006 U.S. Dist. LEXIS 16727, at *6-7 (W.D. Tex. Apr. 6, 2006). Under such a circumstance, the plaintiff may resist removal by arguing that the face of the complaint made it clear that the amount in controversy minimum was reached, and thus the defendant missed the deadline by not removing after receiving the initial complaint. *Chapman*, 969 F.2d at 161. But a plaintiff may *not* bring summary-judgment-type evidence to prove, factually, that the amount at stake in the particular case exceeds the threshold, and that the defendant knew or should have known this earlier but failed to act on it. *See id.* at 163-64. Both postures allow parties to argue that the pleadings themselves reveal that a case is removable, even when an amount is not numerically pleaded. Accordingly, though the posture of the instant case matches the second posture discussed above, cases arising under both postures will be cited in this Order. There is no basis to hold that the "facially apparent" standard is defined differently in cases where the defendant claims that the pleadings set forth a large enough measure of damages, when compared with cases where the plaintiff claims the exact same thing.

Salomon argues that her initial pleadings made clear that the amount in controversy

-6-

exceeded the threshold, and that the removal clock started running when those pleadings were first served. *See* Pl.'s Mot. 2. Salomon's Original Petition requests "back pay and benefits, front pay and benefits, compensatory damages in the past and in the future, reasonable and necessary attorney fees through the appeal process, and exemplary damages, all in an amount within the jurisdictional limits of the State court." Pl.'s Mot. 5. Similar damages allegations were sufficient in both *Burroughs* and *White* to put the defendants on notice that the amount in controversy would likely exceed the jurisdictional minimum. *See White*, 319 F.3d at 673; *Burroughs*, 2006 U.S. Dist. LEXIS 16727, at *2. Further, this Court recently found that a recitation of damages that did not even include front and back pay was sufficient on its face to support removal. *See Muniz*, 2009 U.S. Dist. LEXIS 114619, at *15.

Wells Fargo asserts that, in *Chapman*, the Fifth Circuit established a "bright line rule" requiring plaintiffs to include in their initial pleadings a "specific allegation that damages are in excess of the federal jurisdictional amount" if the thirty day period is to be triggered. *See* Def.'s Resp. 3 *(*citing *Chapman*, 969 F.2d at 163). Wells Fargo argues that Salomon's Motion to Remand should be dismissed because she failed to include the "requisite specific allegation." Def.'s Resp. 4. There is a split among district courts in this circuit regarding the holding in *Chapman*. *See Capturion Network, L.L.C. v. Daktronics, Inc.*, No. 08-cv-232, 2009 U.S. Dist. LEXIS 49171, at *8-9 (S.D. Miss. May 29, 2009) (noting the split of opinion). Some district courts have interpreted *Chapman* to mean that the thirty-day removal clock is triggered only when the plaintiff's initial pleading spells out, in as many words, that the federal jurisdictional limit has been reached. *See, e.g., Capturion*, 2009 U.S. Dist. LEXIS 49171, at *13 (collecting

cases and adopting this first alternative).

However, a majority of courts in this circuit have found that *Chapman* does not "mandat[e] rigid adherence to some kind of formalistic pleading requirement." *Evett v. Consol. Freightways Corp.*, 110 F. Supp. 2d 510, 512-13 (E.D. Tex. 2000); *see also Burroughs*, 2006 U.S. Dist. LEXIS 16727, at *8; *see also Capturion*, 2009 U.S. Dist. LEXIS 49171, at *13 (observing that "probably the larger contingent" of district courts in the Fifth Circuit have adopted this second view). Rather, the *Chapman* "bright line rule" is simply an attempt to avoid an inquiry into "what the defendant knew at the time it received the initial pleading and what the defendant would have known had it exercised due diligence." *Chapman*, 969 F.2d at 163. This Court adopts the "prevailing view [that] *Chapman* 'merely requires that a state court complaint be sufficiently definite on its face to enable defendants to ascertain removability without reliance on speculation or conjecture.'" *Stone v. Nirvana Apts.*, No. 08-CA-656, 2008 U.S. Dist. LEXIS 93090, at *14 (W.D. Tex. Oct. 17, 2008) (San Antonio Div.) (Biery, J.) (citing *Wise v. Bayer*, 281 F. Supp. 2d 878, 884 (W.D. La. 2003)).[2]

This reading of *Chapman* is further supported by subsequent Fifth Circuit opinions which have not required plaintiffs to make a specific numerical allegation of damages or specifically

---

[2] This standard is distinct from the standard applied when ascertaining whether an "other paper" gave the requisite notice in cases where the initial pleadings failed to do so. Courts have consistently held that the notice provided by such "other papers" must be "unequivocally clear and certain," in order to relieve defendants of the burden of filing for "protective" removals on an "equivocal" record which may change and expand over the course of litigation. *See Bosky v. Kroeger Tex. LP*, 288 F.3d 208, 211-12 (5th Cir. 2002).

aver in state court pleadings that damages exceed the federal threshold. *See, e.g., Bosky*, 288 F.3d at 208; *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882-83 (5th Cir. 2000); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). Notably, Wells Fargo does not cite the recent Fifth Circuit decision in *White*, which involved a wrongful termination claim. In *White*, the plaintiff alleged that she was terminated for refusal to commit an illegal act and included a recitation of damages in her initial state court pleadings that was similar to Salomon's. *White*, 319 F.3d at 673-74. The Fifth Circuit affirmed this Court's finding that it was facially apparent from the initial state court pleading that the amount in controversy would more likely than not exceed $75,000, given the extensive categories of compensatory and punitive damages sought in addition to attorney's fees. *Id.* at 675.[3] Accordingly, a mere recitation of an extensive list of damages in an employment matter may suffice to affirmatively reveal that the amount in controversy will likely exceed the jurisdictional minimum.

However, Wells Fargo is correct that, in other recent employment discrimination cases,

---

[3] In its Sur-Reply, Wells Fargo contends that "the Court in *White* did not conclude the Plaintiff's Original Petition alone affirmatively revealed the amount in controversy requirement was met." Def.'s Mot. Ex. A at 4. Defendants are correct that, in *White,* the district court and the Fifth Circuit also examined evidence presented by the defendant in support of removal and found that "it was apparent from the face of the Original Petition and the evidence presented by FCI that the amount in controversy exceeded $75,000." 319 F.3d at 676. But the posture in *White* involved a defendant who removed on the initial pleadings, and thus had the opportunity to argue that the pleadings themselves sufficed, as well as introduce summary-judgment-type evidence regarding the amount in controversy. Neither the trial court nor the Fifth Circuit held that the pleadings, alone, were insufficient; rather, both courts suggest, if anything, that the pleadings alone could well have been enough. *See id.* at 675-76.

this Court has found that initial state court pleadings alleging similar categories of damages did not satisfy the facially apparent standard.  *See* Def.'s Resp. 5-7.  For example, Wells Fargo notes that "the plaintiff's original petition in *Doss* mirrored that of this case."  *Id.* at 6-7; *see Doss v. Albertson's LLC*, 492 F. Supp. 2d 690, 691-94 (W.D. Tex. 2007) (El Paso Div.) (Martinez, J.) (holding that the "Original Petition did not trigger the thirty-day time limit for removal").  Wells Fargo thus points out a recurring issue in the removal jurisprudence of this district.

Original state court pleadings that do not assert a specific numerical amount of damages are a continuing problem for federal district courts in Texas in part because of state court pleading requirements.  The Texas Rules of Civil Procedure state that "in all claims for unliquidated damages" a plaintiff's original petition should contain "*only* the statement that damages are sought within the jurisdictional limits of the court."  TEX. R. CIV. P. 47(b) (emphasis added).  As specific numerical allegations of unliquidated damages are prohibited by Rule 47(b), initial state court pleadings typically do not include such allegations and, even if they are included, courts need not consider them when determining the amount in controversy.  *See Massaad v. Lear Corp.*, No. 03-cv-479, 2004 U.S. Dist. LEXIS 4554, at *5 (W.D. Tex. Feb. 13, 2004) (El Paso Div.) (Cardone, J.) ("As plaintiff's allegation defining an amount of unliquidated damages violates Rule 47(b), it will not be considered in assessing whether the amount in controversy affords this Court jurisdiction.").  Accordingly, the removal of state court pleadings lacking a specific numerical allegation of damages have frequently come before the federal district courts in Texas and have not been decided consistently.

One possible explanation for this inconsistency is that "an inquiry into a motion for

remand is a highly fact-specific inquiry, driven by the unique circumstances of each particular case." *Rivas v. Sw. Foam L.P.*, No. 09-cv-42, 2009 U.S. Dist. LEXIS 49727, at *11 n.2 (W.D. Tex. Apr. 14, 2009) (El Paso Div.) (Briones, J.).  In an employment matter, for example, the length of time between a plaintiff's termination and the time a suit is filed, a plaintiff's ability to mitigate damages, or a plaintiff's annual salary may influence whether the jurisdictional amount in controversy will likely be met.  *See, e.g., Villasana v. Bed Bath & Beyond*, 502 F. Supp. 2d 528, 530 (W.D. Tex. 2007) (El Paso Div.) (Martinez, J.); *Masaad,* 2004 U.S. Dist. LEXIS 4554, at *7; *Martin v. Sw. PCS, L.P.*, No. 03-cv-866, 2003 U.S. Dist. LEXIS 19448, at *10 (W.D. Tex. Nov. 3, 2003) (San Antonio Div.) (Rodriguez, J.).

However, defendants are not without guidance regarding the likely amount in controversy when considering whether removal is proper in an employment discrimination case brought pursuant to the Texas Labor Code.  Section 21.2585(d) stipulates the maximum amount of compensatory and punitive damages that a plaintiff may recover based on the size of the employer.  TEX. LAB. CODE §21.2585(d).[4]  Wells Fargo requested that the compensatory and punitive damages be limited in accordance with section 21.2585(d) but did not specify a number

---

[4] The maximum amount of damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses and the amount of punitive damages awarded" may not be greater than $50,000 for defendants with fewer than 101 employees, $100,000 for defendants with more than 100 and fewer than 201 employees, $200,000 for defendants with more than 200 and fewer than 501 employees, and $300,000 for defendants with more than 500 employees.  TEX. LAB. CODE § 21.2585(d).

of employees or indicate which cap on damages should apply.  Def.'s Resp. Ex. C ¶11.  This Court has not reached the issue of whether the initial pleadings must specify the number of employees in order for the statutory cap to inform the facially apparent amount in controversy.  Still, courts have looked to the statutory cap in cases where the defendant has removed based on an initial pleading to find that the $75,000 amount in controversy will likely be met.  *See, e.g.*, *Muniz*, 2009 U.S. Dist. LEXIS 114619, at *16; *Rivas*, 2006 U.S. Dist. LEXIS 16727, at *10.  In those cases, though, summary judgment-type evidence was also separately admissible on the amount in controversy issue because the defendants removed on the initial pleadings.  *See Muniz*, 2009 U.S. Dist. LEXIS 114619, at *16; *Rivas*, 2006 U.S. Dist. LEXIS 16727, at *10.

However, the cap need not only serve as evidence to establish the amount in controversy.  Defendants may be able to use the cap as a guide when deciding whether or not to remove an initial pleading to federal court.  Wells Fargo correctly claims that the statutory cap only limits what a plaintiff may recover, not what a plaintiff is likely to recover.  Def.'s Resp. 5 (citing *Villasana*, 502 F. Supp. 2d at 530).  Yet, as Salomon indicates, section 21.2585(d) does not apply to back pay or attorney's fees, and an employer of Wells Fargo's size may be subject to an award far greater than the $75,000 minimum based on compensatory and punitive damages alone.  Pl.'s Mot. 5; *see Hoffman La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004).  Further, this Court recently found that a case, like Salomon's, that presents a "claim for multiple forms of relief, including punitive damages, suggests that [the plaintiff] is indeed seeking any possible grounds to maximize her recovery up to the cap, which is well above the jurisdictional threshold."  *Muniz*, 2009 U.S. Dist. LEXIS 114619, at *16 (internal citations omitted).  In this

case, Wells Fargo could have determined that Salomon was similarly seeking to maximize her award under the statute and that her compensatory and punitive damages alone had the potential to substantially exceed the jurisdictional minimum.

### III.     CONCLUSION

Salomon has shown that it was facially apparent from her Original Petition that the amount in controversy exceeds the jurisdictional minimum. Wells Fargo's removal was therefore untimely. Accordingly, Plaintiff's Motion to Remand is hereby **GRANTED.**

**SO ORDERED.**

**SIGNED** on this 21st day of June, 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE